*584 OPINION of the Court, by
Judge Logan.
This was- a suit in chancery to recover certain land by virtue o' the following entry : *585 felkhorn ; thence N. 24° W. 450 poles, to the line of a tract oi Sand sftrvcyed for John Wafej thence with his line S. 70° E. passing his corner,?tlre course continued with Christian’s line passing ids comer, and with Meredith s line to his corner, an ash, cim and hoopwood ; thence B. .20° W. 43 i poles ; thence N. 70° W. to McDowell’s line, and with his line to the beginning.”
*584 “ 21st February 1784 — John Bradford withdraws 2500 acres.Of land, being part of an entry of 3146 acres, made on tiie balance of two'treasury warrants, No. &c. to be taken from the extremity of the two given lines; and re-enters íhe same again, beginning at a sugar tree corner'to a survey of Col. M’Dowell on the waters of
A call for beginning at a Jugar trfa corner to a fur» vey of colonel M’Dowell,’* which jugafr tree c^uld never be found, does not vitiate 'he entry, the other calls being |uf-ificient to fhovtr clearly that thé land furvfeyed was embraced bv the entry
A call for the northeaji corner inftea.i cf the foutheaft cor» ner, cofre&ed by the other calls of the eft» tfy
Entry *<aa bout i mi le be» low the Licking Creek road, in* eluding fh im« pr'ovementmade by R P *‘ ta be furveyed lit á fquare to car» dina! points^ about the improvement-
Several other furveys direst* ed.
The objection to the complainant’s right of recovery upon the ground of adverse possession in the appellees, cannot prevail for the reasons assigned in the case of Brisco, &c. vs. Prewett, (ante 370.)
We shall, therefore, proceed with the investigation of the claims upon their merits. .
The surveys of M’Dowell, Ware, Christian and Meredith, were sufficiently notorious, or their relative positions such as from the calls of this entry might certainly have been found upon reasonable diligence.
In the case of Patterson’s devisees vs. Bradford, (Hard. 101) the identity and notoriety of those surveys seem not to have been questioned. In fact the notoriety ot either could scarcely have failed, with the aid of the entry under consideration,' to have conducted a locator to the situation of the others:
Ware’s, Christian’s and Meredith’s surveys present one continued boundary about a mile north of M’Dow-ell’s. . '
M’Dowell’s survey purports to have for its u rthwest corner a sugar tree, but which seems never to have been found, and there - re satisfactory reasons to believe it never was marked : for as early as 1781, a company of men with a compass for the express purpose of tracing the lirtes of this survey and# ascertaining the corners, commenced at the beginning corner, pursued the eastern boundary, plainly marked, to the northeast corner; thence the patent course westward Jy, but without finding any marked trees j and at the termination of the distance on that line, examined minutely, hut could not even find a sugar tree within any reasonable distance, the growth being walnut, cherry* &c. And M’Dowell, the proprietor of the claim, being in company, then caused to be marked as a corner to his claim, a walnut tree at the patent distance, ,
The line forming the nprtliern boundary of M’Dow-ell’s survey does not appear to have been actually marked : and it is satisfactorily proved that the surveyor *586 who executed the survey sometimes omitted to mack all the corners or liijes of a survey.
Cut be this as it may, the body of his land constructed on the marked line as its base, and extending west-, wardly, was certainly sufficiently known by reputation ; but it must be conceded that its actual termination was t’ e subject of more uncertainty, not only because the line was unmarked, and existed only ideally, depending «pon the course of the, patent, but also because of the distance and inaccessibility to the common record of the survey and patent. By conjecture alone, then, could a subsequent locator have arrived to a knowledge of the true course and length of that line. He might, and no doubt would very probably have supposed that the claim run off at right angles from the base ; but without know, ing the size of the claim he could of course know nothing of its opposite boundary as existing unmarked, and without the guide of written or parol evidence. But although the record may have been beyond the reach of convenience to the locator, there is room for pretty strong inference that the size of M’Dowell’s claim, as well as its reputed situation, was generally known to those of Lexington and best acquainted in its vicinity when the entry of the appellant was made.
Still, however, the call for the,“ sugar tree corner,” especially when the walnut, must have carried the appearance of junior marks, might create some embarrassment with regard to the precise position of this entry. And the most probable relief from this embarrassment was certainly to be found in the opinion that the survey- or had run and marked but one line, and guessed as to the corners @f the opposite'"line.
But this entry does not rest merely upon thesurvej^pf M’Dowell. It depends, moreover, upon the surveys of Ware, Christian and Meredith. Those surveys were notorious; their relative positions represented; and the connection between them and M’Dowell’s formed by given courses and distances. Nor was this by the west, wardly calls of the entry only, but by those also on the east: for whether the mind is conducted to the north, east or northwest corner of M’Dowell,*or to the cor, ner between Ware and Christian, by reversing the Course of the lines, there is nothing to mislead or deceive, except the absence of the “ sugar tree corner,” which, could be found by none, and which all believed* whefe *587 fever it became the subject of inquiry and search, never to have existed. ' ■ ■
As, then, the entry certainly extended as far to the west as M’Dowell’s corner at the walnut, and the cor, nor between Ware and Christian ; as there was no certain, visible and commanding ob ject beyond those points to the west not embraced by the size of the entry; and the survey as made is clearly within its calls, we can perceive no difficulty in sustaining the claim, which is several hundred acres less than the quantity of the entry, confined between the military surveys, and not ex, tended beyond any, call of the entry.
The objection that the call foi%,corner of Meredith at an ash, elm, and hoopwood was deceptive, that being the northeast corner, Whereas the entry has been surveyed from the southeast corner, is entitled to but little Weight. Both the preceding and subsequent calls clearly manifest the mistake, and show most obviously the meaning of the locator.
As, therefore, we can have no hesitation in declaring the claim of the appellant good for so much of the land in contest as at the time of making this entry was not legally appropriated, we shall proceed in the next place to an examination of the claims of the appellees.
They derive their right under the settlement and pre, emption of John Maxwell ; tljp location of which is as follows, to wit:
“ February 8th, 1780 — Nathaniel Evans, assignee of John Maxwell, enters 400 acres by certificate, &c. lying on the north lark of Cane run, about one mile bejow the Licking creek road, including^ improvement made by Robert Patterson.” '
And on the 4th of December 1782, entered the preemption,. “ beginning at the N. W. corner of colonel M’Dowell’s military shryey of 2000 acres on the waters of Cane run: to run from thence N., W. to colonel Christian’s survey; thence S. 70° east along said line a suffi-pient distance to include the said 1000 acres, and also the settlement of 400 acres ; and making an acute angle to strike colonel M’Dowell’s north line 300 poles from the beginning.'’
These,entries, in the case of Patterson's devisees vs. Bradford, (Hard. 101) were held good. The pre-emption depends essentially on the calls of the appellant’s entry; and proof in support of that of pourse supports *588 the pre-emption entry. But the improvement called f°p ’n tbe settlement is not designated on the plat in this cause. Unless, therefore, its position can be ascertained from the description otherwise given, the claim of the appellees will 'perhaps unavoidably be reduced to the pre-emption quantity.
The proof in relation to this call of the settlement we think sufficiently establishes it. But without giving its precise position, how much of that claim may or may pot be lost in the military claims, or ought to be comprehended in addition to the pre-emption, may present a question of some uncertainty.
Upon a careful examination, however, of the evidence, We incline to think that the identity of the improvement may be ascertained by reference to the Spring at which Raiburn lived, about two or three poles above the same, adopting the most unfavorable construction from the uncertainty of its position as to its quantity in this contest. ,
And having thus fixed on the pivot for the settlement, it should be laid thereon in a square with lines to the cardinal .points. A id the pre-emption should be surveyed as directed in the case of Patterson’s devisees vs. Bradford, (Hard. 101) from the northwest corner of M’Doweii’s survey to the southwest* of Christian $ thence binning on those claims, S00 poles on M’Doweii’s from his N. W. corrieP at the walnut; and as far on Christian’s and the course continued, as will include not only the pre-emption of a 1000 acres, but also, as much in addition thereto as may be found of the settlement to lie without those military surveys. For so much of the settlement and the pre-hmption in addition as if in one survey, the appellees have the superior right to the land in contest; and for the residue, the appellant hás the better claim.
The decree of the court below must, therefore, be reversed with costs, and the cause remanded for further proceedings agreeable to this opinion.